2014 VT 107

# Faye Ainsworth v. Charles Chandler and Charles Chandler Electric Company

# Charles Chandler v. Concord Group Insurance Company and Campbell & Boyd Insurance Services

[107 A.3d 905]

Nos. 13-084 & 13-209

Present: **Reiber, C.J., Dooley, Skoglund and Robinson, JJ., and Eaton, Supr. J., Specially Assigned**

Opinion Filed August 29, 2014

542

*Faye Ainsworth*, Pro Se, Greenfield, Massachusetts, Plaintiff-Appellant (13-084).

*Charles Chandler*, Pro Se, Newfane, Defendant-Appellee (13-084) and Plaintiff-Appellant (13-209).

*Andrew C. Boxer* and *Robert D. Mabey* of *Ellis Boxer & Blake PLLC*, Springfield, for Intervenor-Appellee (13-084) and Defendant-Appellee (13-209) Concord Group Insurance Co.

¶ 1. **Reiber, C.J.** These consolidated cases stem from alleged injuries suffered by plaintiff Faye Ainsworth while she was at defendant Charles Chandler's business, Chandler Electric. Plaintiff filed suit, claiming that she was injured when she tripped on a coil of wires that had been placed in the stairway. Defendant filed suit against his insurer, Concord Insurance Group (insurer), arguing that insurer had wrongfully and in bad faith failed to provide adequate coverage for the claim. Insurer filed a counterclaim seeking a declaration of noncoverage. The court granted summary judgment to defendant, concluding that plaintiff was a social guest

of defendant at the time of her visit, that the duty of care defendant owed her was the lesser duty applicable to licensees under Vermont law, as contrasted with that owed to business invitees, and that defendant did not breach this duty. The trial court also granted summary judgment to insurer, on the basis that the underlying personal injury action had been dismissed and therefore no coverage was owed.

¶ 2. On appeal, plaintiff and defendant both contest the court's order granting summary judgment in favor of defendant, and defendant contests the order granting summary judgment in favor of insurer. For the following reasons, we affirm with respect to defendant's motion to disqualify the trial judge, but reverse with respect to plaintiff's suit and reverse and remand for further proceedings with respect to defendant's claim against insurer and insurer's counterclaim for declaration of noncoverage.

¶ 3. We begin with the court's ruling on insurer's summary judgment motion. On appeal from a court's decision to grant summary judgment, "[i]n reviewing the facts, we give the non-moving party . . . the benefit of all reasonable doubts and inferences." *Buxton v. Springfield Lodge No. 679*, 2014 VT 52, ¶ 2, 196 Vt. 486, 99 A.3d 171 (quotations omitted). The incident giving rise to these lawsuits occurred on May 17, 2009, while plaintiff was at defendant's business, Chandler Electric. At the time of the alleged injury, plaintiff had been dating defendant for six years. She later married him in 2010.[1] According to plaintiff's and defendant's depositions, plaintiff stated that her purpose that day was "just a visit" to her boyfriend, the defendant. Defendant understood that plaintiff "came there because I was dating her." There were no other people in the building at the time. Upon entering the building, plaintiff "came up to [defendant's] office to say hello to [him]." Accordingly, plaintiff proceeded up a short flight of stairs to a landing, and then ascended a longer set of stairs leading to defendant's office. Neither party disputes that there were coils of wire stacked near the lower set of stairs, but that nothing protruded into the stairway itself at that time.

¶ 4. After visiting with defendant, plaintiff and defendant left defendant's office together, with plaintiff leading the way. Plaintiff walked down the longer set of stairs, but upon reaching the

---

[1] Plaintiff states for the first time on appeal that she and defendant are no longer married.

bottom of the second set of stairs, she tripped and fell to the ground. Plaintiff claims that the coil of wire previously stacked to the right of the stairs "caught [her] ankle" when she fell down. She stated that, although she saw nothing on the stairwell steps when she looked back at the stairs immediately after falling, she did see a wire protruding into the stairwell space from the spools sitting to the side of the stairwell. She claims to have sustained severe and permanent injuries as a result of the incident, including partial blindness, a severe ankle sprain, scrapes and bruises, and a fractured tooth.

¶ 5. The procedural history of the ensuing lawsuit is noteworthy. On March 22, 2010 — more than four months before plaintiff filed her personal injury lawsuit on August 4, 2010 — defendant filed a lawsuit against his insurer, claiming that it breached the terms of defendant's liability policy by not awarding plaintiff over one million dollars in compensation. Defendant claimed millions of dollars in damages for insurer's alleged conduct, including more than one million dollars "for the monetary compensation that he will most likely have to pay [plaintiff] and her attorney as a result of [the insurer's] unlawful delay and denial of this claim." In its answer to defendant's complaint, the insurer denied all of the allegations and counterclaimed for a declaration of noncoverage.

¶ 6. On August 4, 2010, plaintiff filed the instant action, seeking over two million dollars in damages. Defendant answered the complaint by admitting the factual allegations and conceding liability. Upon learning of the lawsuit and defendant's admissions, insurer successfully moved to intervene to defend its interests. Insurer later filed a motion for summary judgment on the grounds that plaintiff's claims fail as a matter of law. It argued that because plaintiff was a social guest at the time of the incident, defendant's duty of care only required disclosure of dangerous conditions known to him, which he did not breach. In her response to insurer's summary judgment motion, plaintiff claimed that she was a "[g]uest and [c]ustomer" of defendant, that insurer's sales agent testified on deposition that there was a lot of debris around the stairway of defendant's business, and that the state had issued "violation notes" after visiting the business premises in 2005. On February 21, 2013, the trial court granted insurer's motion for summary judgment against plaintiff. Defendant's lawsuit against insurer was subsequently dismissed as moot on May 13, 2013.

¶ 7. On appeal, plaintiff contends that the trial court erred in holding that she was a social guest, and that defendant did not breach his duty of care to her. Defendant argues that because the court erred in granting summary judgment in the underlying suit, the court incorrectly granted insurer's motion for summary judgment on mootness grounds.

¶ 8. We review the trial court's decision using the same standard as the trial court. *Sobel v. City of Rutland*, 2012 VT 84, ¶ 12, 192 Vt. 538, 60 A.3d 625. "We will affirm if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Id.*; see also V.R.C.P. 56(a). Although the court must view the pleadings and affidavits in the light most favorable to the nonmoving party, *Beebe v. Eisemann*, 2012 VT 40, ¶ 3, 192 Vt. 613, 49 A.3d 160 (mem.), the nonmovant bears "the burden of submitting credible documentary evidence or affidavits sufficient to rebut the evidence of the moving party." *Endres v. Endres*, 2008 VT 124, ¶ 10, 185 Vt. 63, 968 A.2d 336.

¶ 9. We begin with plaintiff's claim that the court wrongfully found that she was a social guest rather than a business invitee. The trial court applied Vermont's traditional common law standard of care in premises liability, which distinguished between business invitees and licensees, or social guests. See *Farnham v. Inland Sea Resort Props., Inc.*, 2003 VT 23, ¶ 9, 175 Vt. 500, 824 A.2d 554 (mem.). Under the common law, a possessor of land owed a business invitee a duty to use "reasonable care . . . so that the invitee will not be unnecessarily or unreasonably exposed to danger," whereas the duty to licensees was merely to refrain from "active or affirmative negligence." *Menard v. Lavoie*, 174 Vt. 479, 480, 806 A.2d 1004, 1006 (2002) (mem.) (quotations omitted). Here, the court found the record to be mixed regarding the purpose of plaintiff's visit. The parties did not dispute that plaintiff was romantically involved with defendant at the time of her visit, and plaintiff's sworn deposition testimony indicated that she was at defendant's business "just to visit" defendant. However, plaintiff also indicated in response to insurer's motion for summary judgment that she was a customer at defendant's business, and she produced a receipt showing that she had bought three smoke detectors that day. The court largely dismissed plaintiff's latter evidence, reasoning that, even if it accepted plaintiff's contention that she was a customer, her "primary reason" for visiting defendant was social, not business-related. Thus, she was properly considered a licensee.

¶ 10. ■ ■ We have held that, where the facts do not conclusively establish a plaintiff's status, and a factfinder may infer multiple purposes for a plaintiff's presence on a defendant's premises, the question of whether the dominant purpose was business or social remains a question of fact for the jury. *Farnham*, 2003 VT 23, ¶ 11 (holding that summary judgment against plaintiff was premature because determination of whether plaintiff was a trespasser, invitee or licensee was question of fact). We need not reach the question, however, of whether the trial court in this case erred in determining plaintiff's status based on the primary purpose for her visit, because we reverse and remand for further proceedings in light of our recent abrogation of the common law distinction between invitees and licensees, as held in *Demag v. Better Power Equipment, Inc.*, 2014 VT 78, ¶ 26, 197 Vt. 176, 102 A.3d 1101. In accordance with *Demag*, on remand the trial court is to apply the standard of "reasonable care under all the circumstances," which "is no more and no less than that of any other alleged tortfeasor." *Id.* ¶¶ 26-27 (quotations omitted). In this determination, "[a]n entrant's status, no longer controlling, is simply one element, among many, to be considered in determining the landowner's liability under ordinary standards of negligence." *Id.* ¶ 26 (quotations omitted).[2]

¶ 11. ■ Were we to conclude that plaintiff did not present sufficient evidence to raise an issue of material fact on a claim of ordinary negligence, we could affirm the trial court on alternate grounds. See, e.g., *Cheney v. City of Montpelier*, 2011 VT 80, ¶ 8, 190 Vt. 574, 27 A.3d 359 (mem.) (affirming trial court on alternate grounds). Plaintiff has presented sufficient evidence, however, to defeat summary judgment under an ordinary negligence standard. "Common law negligence has four elements: a legal duty owed by defendant to plaintiff, a breach of that duty, actual injury to the plaintiff, and a causal link between the breach and the injury." *Demag*, 2014 VT 78, ¶ 6 (quotations omitted). " 'Whether a defendant is negligent depends on whether his or her action was objectively reasonable under the circumstances; that is, the question is whether the actor either does foresee an unreasonable risk

---

[2] We find *Demag* controlling based on "the common-law rule, recognized in both civil and criminal litigation, 'that a change in law will be given effect while a case is on direct review.' " *State v. Shattuck*, 141 Vt. 523, 529, 450 A.2d 1122, 1125 (1982) (quoting *United States v. Johnson*, 457 U.S. 537, 543 (1982)).

of injury, or could have foreseen it if he conducted himself as a reasonably prudent person.' " *Id.* ¶ 27 (quoting *Endres*, 2008 VT 124, ¶ 13). Here, the trial court held that defendant had no duty to warn plaintiff of the risk of injury from the piled coils of wire next to the stairs because the wire was "clearly visible, and the risk [that it] might fall over and obstruct the stairs was equally obvious to both the plaintiff and defendant." Further, the court found that the piling of wires next to the staircases "arguably did not create an unreasonable risk of harm." The trial court concluded that there was insufficient evidence to defeat summary judgment as to the elements of duty and breach.

¶ 12. We disagree. Given plaintiff's deposition testimony that she did not see the wire in the stairs before she tripped, and defendant's admissions that the area was poorly lit, covered in debris, and unsecured, a reasonable jury could conclude that either the danger was not open and obvious or that defendant should have foreseen the harm even if the danger was obvious. Thus, a jury could find that defendant had a duty to make the condition safe or warn plaintiff of the danger, and that he breached this duty. Cf. *Menard*, 174 Vt. at 479-80, 806 A.2d at 1005-07 (holding defendants not liable for negligence under either an invitee or licensee standard where danger of spiral staircase was obvious to plaintiff, defendants had installed a guardrail, area was well-lit, and there was no "foreign substance" on the stairs). Plaintiff also testified as to the elements of causation and injury, stating that defendant's breach caused the coiled wire to protrude into the stairwell, inducing her to trip and injure herself. Viewing the facts in the light most favorable to plaintiff, plaintiff has presented a genuine issue of material fact as to the elements of common law negligence sufficient to defeat summary judgment.

¶ 13. Next, we address defendant's claim that his motions to disqualify the trial judge in this case were wrongly denied.[3] Defendant filed numerous motions to disqualify the trial judge throughout the course of litigation. His motion filed on January 3, 2012, was referred to an administrative judge, who denied the

---

[3] Defendant has filed a litany of motions to disqualify judges, court personnel, and attorneys, all of which have been denied as lacking in merit. In this case, his primary arguments on appeal relate to his motion to disqualify the trial judge. Although he discusses allegedly unprofessional behavior by insurer's attorneys in his brief on appeal, his allegations appear to be aimed at the way the judge has handled his case.

motion on January 23, 2012. See V.R.C.P. 40(e)(3) (allowing judge to rule on motion to disqualify or refer motion to administrative judge or her designee). In response to this adverse ruling, defendant again moved to disqualify the trial judge, and also moved to disqualify the administrative judge who ruled against him. Defendant based his complaints against the trial judge on the fact that she said on one occasion that she had not read defendant's case file; his disagreement with her rulings and handling of the case; and an alleged financial conflict with her prior law firm. He claimed that the administrative judge harbored a bias against pro se litigants and that she did not sufficiently investigate the trial judge's behavior.

¶ 14. Because of the claim against the administrative judge, the administrative judge referred defendant's motions to a new superior court judge, who denied both motions on May 7, 2012. The court found that defendant's allegations against the trial judge amounted to "broad claims that [she] is prejudiced against pro se litigants in general and against him in particular[,] [which] have no meaningful support in the record and in the evidence he has submitted." The court found defendant's allegations regarding the judge's prior law firm to be "highly improbable," considering that the alleged financial dispute arose after the judge left the firm. As to the administrative judge, the court found that defendant provided no evidence to support his claims that she was biased or that she had abdicated her disciplinary responsibilities, and concluded that defendant's allegations were baseless. Despite these adverse rulings, defendant filed yet another motion to disqualify the trial judge on February 21, 2013, which was denied on March 11, 2013 by the administrative judge for the same reasons as the superior court's prior decision. On appeal, defendant argues that the trial judge harbors prejudice against him due to his interactions with her at her prior law firm, during defendant's prior cases, and during the instant case.

¶ 15. ■ The Code of Judicial Conduct provides that a judge "shall disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned." A.O. 10, Canon 3E(1). Judges are "accorded a presumption of honesty and integrity, with [the] burden on the moving party to show otherwise in the circumstances of the case." *Ball v. Melsur Corp.*, 161 Vt. 35, 39, 633 A.2d 705, 709 (1993) (quotations omitted). We will not disturb a decision regarding disqualification unless "there has

been an abuse of discretion, that is, if the record reveals no reasonable basis for the decision." *Id.* at 40, 633 A.2d at 710.

¶ 16. ▮▮▮ Here, there is no basis to disturb the denial of defendant's motions. Defendant has offered no evidence to lend factual support to any of his allegations of prejudice. The fact that the trial judge has previously ruled against him does not, in itself, constitute evidence of bias. See *Liteky v. United States*, 510 U.S. 540, 555 (1994) ("[J]udicial rulings alone almost never constitute a valid basis for a bias or partiality motion. . . . Almost invariably, they are proper grounds for appeal, not for recusal."); *Luce v. Cushing*, 2004 VT 117, ¶ 23, 177 Vt. 600, 868 A.2d 672 (mem.) (holding that "adverse rulings, no matter how erroneous or numerous" are not sufficient to establish prejudice (quotations omitted)). Regarding the trial judge's law firm, in its May 2012 ruling the superior court found that defendant's dispute was with the firm, not the judge specifically, and that the dispute arose after the judge left the firm. Contrary to these findings, defendant now argues on appeal that his financial dispute was with this particular judge, not her law firm generally, and that the dispute dates back to her days in practice. Defendant did not raise this argument below, and we need not reach the merits because his arguments fail on preservation grounds. *Bull v. Pinkham Eng'g Assocs.*, 170 Vt. 450, 459, 752 A.2d 26, 33 (2000) ("Contentions not raised or fairly presented to the trial court are not preserved for appeal."). Defendant's motions before the trial court allude to a dispute with the judge's prior law firm, not the trial judge, and instead focus on her adverse rulings and his perception that she was biased against pro se litigants without discussing the specific facts raised on appeal. Thus, defendant's claims fail.

¶ 17. We affirm the decisions denying defendant's motions to disqualify, and reverse the trial court's grant of summary judgment in favor of defendant. As to defendant's lawsuit against insurer, the court's May 13, 2013 order granting summary judgment in favor of insurer hinged on its dismissal of plaintiff's claims. Accordingly, we reverse the court's grant of summary judgment in favor of insurer and remand for further proceedings consistent with this opinion.

*Affirmed as to the motions to disqualify; reversed and remanded as to the grant of summary judgment in favor of defendant; and reversed and remanded as to the grant of summary judgment in favor of insurer.*